UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Zaatnure Xi-Amaru, | ) Case No. 8:22-cv-01211-DCC-JDA |
| Plaintiff, | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| Nnakina Xi-Amaru, | ) |
| Defendant. | ) |

Zaatnure Xi-Amaru ("Plaintiff"), proceeding pro se, brings this civil action against Nnakina Xi-Amaru ("Defendant"). All pretrial proceedings in this matter were referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(e), D.S.C. Having reviewed the pleadings and other documents filed in this action in accordance with applicable law, the undersigned concludes that this action should be dismissed for improper venue or, in the alternative, transferred to the court having proper venue over the claims in this action, as explained below.

## BACKGROUND

Plaintiff commenced this action on April 13, 2022, by filing a complaint on the standard court form along with an attachment containing his allegations. [Docs. 1; 1-1.] The Court construes both documents together as the Complaint filed in this matter. The allegations in the Complaint are confusing and difficult to decipher. However, the undersigned is able to glean the following pertinent information and allegations.

Plaintiff appears to contend that this Court has jurisdiction based on both federal question and diversity of citizenship. [Doc. 1 at 3.] As to his contention that the Court has federal question jurisdiction, Plaintiff asserts as follows:

> Pursuant to the treaty of peace and friendship 1786 original grant between the Emperor of Almaghrib and the United States of America. Pursuant to treaty of 1866 Cherokee with the United States of America. Pursuant to the treaty of Camp Holmes.

[*Id*.] As to his contention that the Court has diversity jurisdiction, Plaintiff makes the following assertions. Plaintiff is both an individual who is a citizen of the "South Carolina Republic" and an unincorporated corporation under the laws of the "South Carolina Republic." [*Id*. at 4.] Plaintiff contends that Defendant is a citizen of Honduras and that her corporate designation is a fraud. [*Id*.] As to the amount in controversy, Plaintiff contends Defendant destroyed his business, worth $150,000 yearly, by engaging in real estate fraud and property damage. [*Id*. at 5.]

Plaintiff summarizes his claim against Defendant as follows:

> Theft of Plaintiff domain name; theft of Plaintiff stripe account; theft of Plaintiff Instagram account; theft of Plaintiff Gmail account; destruction of Plaintiff real estate; theft of Plaintiff trademark.

[*Id*.] And, for his relief, Plaintiff requests money damages in the amount of $150,000 for the theft and deletion of Plaintiff's domain and $70,000 for the theft of Plaintiff's Stripe account. [*Id*.]

Plaintiff further alleges as follows:

> . . . Plaintiff is a United States National and a Tribal Citizen of the Xi-Amaru tribal Government also known as the Aboriginal republic of North America and that [he met] Defendant . . . on the internet (Instagram) . . . in 2018. After a few messages [they] decided to meet in or around July 2018 as [Plaintiff] was going to [his] summit called the Aboriginal Summit. Upon meeting the defendant in July 2018 the Plaintiff found out that the defendant was facing deportation by the united states federal government for fraud, marriage fraud and that the

> defendant was born in Honduras and ha[d] a Honduras passport, the defendant at that time was working in a car dealership.  The Plaintiff let the Defendant know that he was a Jurist of his tribal government and a union carpenter.  The plaintiff also let the defendant know that he had his own business called Indigenous of the North . . .
>
> The Plaintiff [took] defendant to the summit and introduce[d] her to the Chief of [his] Government and tribal peers, around this time the Plaintiff and the defendant became intimate.
>
> The Plaintiff would fly back to New York while the defendant would stay behind in Atlanta.  The defendant would later ask the Plaintiff to move to New York with him as the Plaintiff started to pay for the defendant['s] car note and rent (as customary of plaintiff['s] tribal government that the Man take care of the woman) . . .

[Doc. 1-1 at 1–2.]

Plaintiff contends that Defendant convinced him to build a house in Honduras and that, even though he funded the construction of that house, she has refused to give him the deed to the house and to reimburse him for the cost of building the house.  [*Id*. at 2.]  Then, in 2019, "the Chief of [Plaintiff's] Government [did] a Zoom call to the Plaintiff to teach [him] the Process of credential making for tribal members of [his] government."  [*Id*.]  Defendant witnessed the Zoom call and became familiar with Plaintiff's business affairs for his business, Indigenous of the North.  [*Id*.]  Plaintiff hired Defendant to help create a website for his business.  [*Id*.]

From 2020-21, Plaintiff's business grossed over $300,000 that was deposited into his Stripe account.  [*Id*. at 3.]  Plaintiff's Stripe account was connected to his personal bank account.  [*Id*.]  Defendant then fraudulently added her name to Plaintiff's Stripe account.

3

[*Id*.] Plaintiff lived with Defendant and financially supported her. [*Id*.] Plaintiff appeared on Defendant's behalf in immigration court and submitted an affidavit

> claiming responsibility for the defendant as the defendant was now a tribal member under the Plaintiff['s] direct authority, which took place [in] 2019 [in] Newark[,] New Jersey immigration court. The . . . immigration case was dismissed "with prejudice" [but] Plaintiff would like to reapply for the defendant['s] deportation [due] to the recent fraud charges the defendant caused against the Plaintiff and his tribal government.

[*Id*.] In 2021, Plaintiff and Defendant moved from New Jersey to South Carolina. [*Id*.] Around that same time, Defendant's "behavior became so irrational that the Chief of [Plaintiff's] Government told [him] that '[Plaintiff] can stay but the defendant had to go.'" [*Id*.] After Plaintiff and Defendant separated, Plaintiff learned that Defendant had created her own website that "was completely in the likeness of" Plaintiff's website, that she had "plans on starting her own Government," that she gained access to Plaintiff's Stripe account, that she blocked Plaintiff's access to his company Instagram account, that she blocked Plaintiff's access to his company email accounts, and that she committed fraud by adding her name as owner of Plaintiff's trademark. [*Id*. at 3–4.] Plaintiff seeks money damages and various other forms of injunctive relief against Defendant related to the conduct noted above. [*Id*. at 6–14.]

## **STANDARD OF REVIEW**

Because Plaintiff is a pro se litigant, his pleadings are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even under this less stringent standard, Plaintiff's Complaint is subject to summary dismissal. The mandated liberal

4

construction afforded to pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which Plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct Plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court.  *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

Because Plaintiff has paid the full filing fee, his pleadings are not subject to the prescreening provisions of 28 U.S.C. § 1915.  Nevertheless, this Court possesses the inherent authority to review the pro se pleadings to ensure that subject matter jurisdiction exists and that a case is not frivolous.  *See Ferguson v. Wooton*, 741 F. App'x 955 (4th Cir. 2018) (collecting cases and explaining that "[f]rivolous complaints are subject to dismissal pursuant to the district court's inherent authority, even when the plaintiff has paid the filing fee" and that "dismissal prior to service of process is permissible when a court lacks subject matter jurisdiction"); *Doiley v. Lieber Corr. Inst.*, No. 2:07-cv-3969-PMD, 2008 WL 190637, at *1 (D.S.C. Jan. 17, 2008) (explaining a plaintiff's "claims are subject to an initial *sua sponte* review by the Court pursuant to the Court's inherent authority to ensure that subject matter jurisdiction exists" even where the pro se plaintiff paid the filing fee and did not seek to proceed in forma pauperis).

## **DISCUSSION**

**Venue Law**

28 U.S.C. § 1391(b) provides that the proper venue for a plaintiff to pursue a claim in a diversity action lies in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). "The burden lies with the plaintiff to establish that venue is proper in the judicial district in which the plaintiff has brought the action." *Hackos v. Sparks*, 378 F. Supp. 2d 632, 634 (M.D.N.C. 2005).

"When a plaintiff files an action in the wrong venue, 28 U.S.C. § 1406(a) directs courts to 'dismiss, or if it be in the interest of justice, transfer such case' to the proper venue." *Levi v. Harris Teeter, LLC*, No. 4:16-cv-1083-RBH-TER, 2016 WL 4942057, at *2 (D.S.C. Aug. 25, 2016), *Report and Recommendation adopted by* 2016 WL 4911047 (D.S.C. Sept. 15, 2016). The choice to dismiss or transfer a case afforded by 28 U.S.C. § 1406 lies within the sound discretion of the district court. *See Quinn v. Watson*, 145 F. App'x 799, 800 (4th Cir. 2005). Because federal district courts are vested with the inherent power to control and protect the administration of court proceedings, *see White v. Raymark*

*Indus., Inc.*, 783 F.2d 1175, 1177 (4th Cir. 1986), the district court has the power to consider sua sponte whether venue is proper, *see Harmon v. Sussex Cnty.*, No. 4:17-cv-2931-RBH-TER, 2017 WL 6506396, at *1 (D.S.C. Nov. 13, 2017) (citing *Jensen v. Klayman*, 115 F. App'x 634, 635–36 (4th Cir. 2004)), *Report and Recommendation adopted by* 2017 WL 6498165 (D.S.C. Dec. 19, 2017).

**Venue Analysis**

The undersigned concludes that this Court is not the proper venue to entertain Plaintiff's claims. Instead, a more appropriate venue properly lies, if at all, in the United States District Court for the Northern District of Georgia.[1] Thus, this case should be dismissed or transferred. *See* 28 U.S.C. § 1406(a) (requiring that a case filed in an improper venue must be dismissed, or, if it is in the interest of justice, transferred to a district in which it could have been brought).

Plaintiff contends he is a citizen of South Carolina, and he lists his present address as a home in Greenwood, South Carolina. [Doc. 1 at 2, 4.] Plaintiff contends that Defendant is citizen of Honduras. [*Id*. at 4.] He further explains, "Defendant is an Honduras agent who's unregistered and currently using the Aboriginal Republic of North America Tribal Government Image and Likeness to extract Information from the United States Citizens to continue a fraudulent, and Criminal enterprise." [Doc. 1-1 at 5.] However, Plaintiff lists Defendant's present address as a location in Atlanta, Georgia. [Doc. 1 at 2.] Further, Plaintiff alleges that the events giving rise to his claims occurred in New York, New Jersey, Georgia, and Honduras. [*See, e.g.*, Doc. 1-1 at 1–3 (Plaintiff and

---

[1]The Court expresses no opinion as to whether other districts might also be proper venues.

Defendant spent time together in Atlanta, Georgia; lived together in New York and New Jersey; and engaged in business together in those states), *id.* at 2 (Plaintiff and Defendant built a home in Honduras and Plaintiff transferred money to Defendant's family in Honduras), *id.* at 3 (Plaintiff appeared on Defendant's behalf at immigration court in Newark, New Jersey).]

The Complaint is devoid of any allegations concerning whether venue is proper in this Court.  Nevertheless, the undersigned concludes, based on the allegations noted above, that this Court is not the proper venue because Defendant appears to be a citizen and resident of Georgia and the events giving rise to the claims in this case occurred primarily in Georgia, New York, New Jersey, and Honduras.[2]  Thus, not only is venue

---

[2] Plaintiff alleges that, after he moved from New Jersey to South Carolina in 2021, Defendant's behavior "became so irrational" that she "broke the Plaintiff['s] side Man cave door with an aluminum bat," causing damage to his property in South Carolina. [Doc. 1-1 at 3.] Plaintiff's Complaint contains no other allegations related to South Carolina.  On the other hand, Plaintiff's Complaint contains numerous allegations about property and conduct in other states and in Honduras.  As such, Plaintiff cannot show that "a **substantial** part of the events or omissions giving rise to the claim occurred" in South Carolina or that "a **substantial** part of property that is the subject of the action is situated" in South Carolina.  28 U.S.C. § 1391(b)(2)–(3) (emphasis added).

> The test for determining venue [under § 1391(b)] is not the defendant's contacts with a particular district, but rather the location of those events or omissions giving rise to the claim.  In general, in determining whether events or omissions are sufficiently substantial to support venue under the amended statute, a court should not focus only on those matters that are in dispute or that directly led to the filing of the action.  Rather, it should review the entire sequence of events underlying the claim.

*Flexible Techs., Inc. v. SharkNinja Operating LLC*, No. 8:17-cv-00117-DCC, 2018 WL 1175043, at *5 (D.S.C. Feb. 14, 2018) (citations and internal quotation marks omitted), *Report and Recommendation adopted by* 2018 WL 1158425 (D.S.C. Mar. 5, 2018).  Here, the entire sequence of events underlying the claims in Plaintiff's Complaint demonstrates

improper in this District under 28 U.S.C. § 1391(b)(1) because the sole Defendant resides in Georgia, the connection of the claims asserted by Plaintiff to Georgia "so far predominate over those in [South Carolina] as to make it impossible to conclude that a 'substantial part of the events or omissions giving rise to the claim' occurred in this district." *MTGLQ Invs., L.P. v. Guire*, 286 F. Supp. 2d 561, 566 (D. Md. 2003). As such, it appears that venue for this action properly lies in the Northern District of Georgia and not in this District. Accordingly, the Court finds that dismissal pursuant to 28 U.S.C. § 1406(a) is appropriate.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the undersigned recommends that the District Court dismiss this action. In the alternative, the undersigned recommends that the District Court transfer this action to the Northern District of Georgia.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

April 27, 2022
Greenville, South Carolina

***Plaintiff's attention is directed to the important notice on the next page.***

---

that venue is not proper in this District. *Id.* at *6 ("[T]he court finds that Defendants' minimal contacts with South Carolina do not constitute a *substantial part of the events* giving rise to Plaintiff's claim.") (emphasis in original).

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Suite 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).